IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GREAT MIDWEST INSURANCE
COMPANY,

      Plaintiff,

v.

BUTCH THOMPSON
ENTERPRISES, INC, CONRAD
CORPORATION, INC., JUDSON C.
THOMPSON, and CAROLYN S.
THOMPSON,

      Defendants.

Case No. 1:23-cv-03440-SEG

## DEFENDANTS CONRAD CORPORATION, INC., JUDSON C. THOMPSON, and CAROLYN S. THOMPSON'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Conrad Corporation, Inc., Judson Thompson, and Carolyn Thompson (collectively "Defendants") brings this the Response in Opposition to Plaintiff's Motion for Partial Summary Judgment. Great Midwest Insurance Company's ("Great Midwest")'s motion should be denied.

## I. Introduction

Great Midwest's motion should be denied because there exist material facts regarding whether Great Midwest satisfied the requirements of good faith and fair

dealing in taking over the project, specifically given the substantial grounds for contesting the default.  Moreover, the motion should be denied because this action should be stayed as the primary party in interest, Butch Thompson Enterprises ("BTE"), has filed bankruptcy and is entitled to an automatic stay.  Dkt. 54 – Suggestion of Bankruptcy.  Because of the close relationship and numerous personal guarantees of the Defendants to BTE, the non-Debtor Defendants should receive protection from the automatic stay under Bankruptcy Code 362 as a judgment against them would be a de facto judgment against BTE.

### A. <u>Background</u>

On or about March 30, 2022, BTE, as general contractor, entered into a prime contract with the Cobb County Board of Commissioners, more specifically known as CCDOT Contract No. 001435 (the "Contract").  Statement of Additional Material Facts ("SAMF") ¶1.  The Contract was for construction of a sidewalk project known as the Hillcrest Drive Sidewalk project, Cobb County Project No. X2764 (the "Project").  *Id.*

The Contract provides that Cobb County must make timely payments to the Contractor after receipt of a payment application (SAMF ¶2), but it may also withhold payment if it determines that the Contractor has materially breached the Contract in the following ways:

**Contract Section 109.07(A)**

> *The County will make payment to the Contractor within a reasonable period of time after receipt of the payment application*; but may withhold payment if the County determines there is unsatisfactory job progress, defective work, disputed work, actual or potential third party claims, failure to make timely payments for labor or materials, damage to other entities connected with the project, or reasonable evidence that the contract cannot be completed for the balance of the contract price.

SAMF ¶2-3.

The Contract further provides that Cobb County must notify the Contractor of any alleged breach of contract, and that the Contractor is entitled to the right to cure that breach within ten (10) days of that notice:

**Contract Section 2.2**

> Failure to comply with any of the requirements and procedures of the County (i.e., failure to timely supply required affidavits or compliance certification documents; failure to utilize federal work authorization procedures; failure to permit or facilitate audits or review of records by records by County officials upon request; and/or failure to continue to meet any of the statutory of County obligations during the life of the contract) shall constitute a material breach of the agreement and shall entitle the County to dismiss the general contractor or to require the dismissal of any subcontractor or sub/subcontractor (irrespective of tier) for failing to fully comply with these requirements. *Upon notice of a material breach of these provisions, the Contractor (or subcontractor, regardless of tier) shall be entitled to cure the breach within ten (10) days and provide evidence of such cure.* Should the breach not be cured, the County shall be entitled to all available remedies, including termination of the contract, the requirement that the subcontractor be dismissed from performing work under the contract, and any and all damages permissible by law.

SAMF ¶3-4.

3

With respect to default, the Contract states as follows:

**Contract Section 108.09**

If the Contractor fails to begin work within the time specified, or fails to perform the work with sufficient workers, equipment, or materials to ensure prompt completion, or performs the work unsuitably, or neglects or refuses to remove materials or perform anew such work as shall be rejected as defective and unsuitable, or discontinues the prosecution of the work as shall be rejected as defective and unsuitable or discontinues the prosecution of the work, or from any other cause whatsoever does not carry on the work in an acceptable manner, or becomes insolvent or is adjudicated a bankrupt, or commits any act of bankruptcy or insolvency, or allows any final judgment to stand against him unsatisfied for a period of 10 days, or makes an assignment for the benefit of creditors, or fails to comply with the contract requirements regarding wage payments of EEO requirements, or fails to sign the standard release form as stipulated in Subsection 109.08 Final Payment, ***the Engineer may give notice in writing by registered or certified mail to the Contractor and the Surety, stating the nature of the deficiencies and directing that the Work including its progress be remedied and made satisfactory.***

If, within 10 days after such notice, the Contractor or its Surety does not proceed in satisfactory way to remedy the faults specified in said notice, the Engineer will notify the Contractor and its Surety by registered or certified mail that the Contractor is in default and, by the same message, direct the Surety to take over the work including all of the obligations pertaining to the Contract.

\* \* \*

The Contract defines "Engineer" as "The Cobb County Director of Transportation, acting directly or through their duly authorized representatives." SAMF ¶4.

After work on the Project began, BTE entered into subcontracts and material purchase orders for the project.

4

Pursuant to the terms of the Contract, Cobb County was expected to provide progress payments during the Project.  SAMF ¶ 5. These payments were intended to pay for materials purchased by BTE and subcontractors providing work for the Project.  *Id.*

BTE submitted Pay Application No. 1 to Cobb County requesting payment. Cobb County did not fulfill this Pay Application in full. This is reflected in Pay Application No. 2.  SAMF ¶6.

On February 8, 2023, BTE submitted Pay Application No. 2 to Cobb County, requesting payment showing $80,801.91 that had been outstanding for 90 days. Cobb County did not fulfill this Pay Application in full.  SAMF ¶7.

On August 11, 2022, BTE submitted Pay Application No. 3 to Cobb County, requesting payment of $33,292.04 on or before August 11, 2022. Cobb County did not fulfill this Pay Application in full.  SAMF ¶8.

When BTE submitted Pay Application No. 10, it requested $176,904.30, less $8845.22 retainage, for a net payable amount of $168,059.08.  SAMF ¶9. Cobb County inexplicably and unilaterally slashed the bill to a net pay of $21,963.76.  *Id.* This drastic shortchange payment did not cover the costs of labor and material provided by BTE to Cobb County.  SAMF ¶10. Thus, BTE's ability to compensate its subcontractors and materialmen suffered and it blunted BTE's efforts to progress the Project.  *Id.* These losses are the direct result of the County's failure to provide

payments to BTE as required by the Contract. BTE was forced into financial losses to cover the cost of labor and materials due to Cobb County's breach of Contract. SAMF ¶11.

Despite Cobb County's actions, David Cook, an attorney retained by Cobb County, sent BTE a Notice of Potential Default Letter on March 1, 2023. SAMF ¶16, Dkt. 56-3 Kahn Dec. p. 107-108. This letter claimed that BTE was at risk of being in default and provided BTE ten (10) days to cure the deficiencies alleged in the letter. Kahn Dec. p. 107-108. It was silent as to Cobb County's inadequate payments to BTE. *Id.* Moreover, the Notice of Potential Default was not sent in accordance with the default notice requirements in Section 108.09 as it was not sent by the Engineer or its authorized agent as required by the Contract. *Id.*, *see also* SAMF ¶16.

Cobb County has engaged in a pattern of weaponizing nonpayment on this Project and others to ensure that BTE could not pay for labor and materials or proceed with work pursuant to the terms of the Contract. This weaponization was a material breach of BTE's contract and excused BTE from any further performance obligations. These breaches also excused Great Midwest from any performance obligations.

## II. ARGUMENT AND CITATION OF LAW

### A. Application of the Automatic Stay

As a preliminary matter, the summary judgment motion against the Defendants is premature as the automatic stay in effect for BTE.  All debts being sought in this action originated from BTE and its Contract with Cobb County.  BTE filed a notification of bankruptcy on September 3, 2024, giving notice that the company had filed a Chapter 7 bankruptcy and that the automatic stay applied to BTE and any of BTE's property and debts.  Dkt. 54 – Notice of Bankruptcy; SAMF ¶19.  All amounts being sought in this action stem from BTE's alleged debts or amounts owed to Great Midwest.  Dkt. 56-2 Statement of Undisputed Material Facts ("SUMF") ¶¶ 11, 44, 54, and 64.

Given the close relationship between debts for BTE and claims against Defendants, the automatic stay should apply to Defendants.  Thus, as an initial matter, the motion is premature because there has not been any relief from the automatic stay pursuant to 11 U.S.C. 362(d).  As of the date of this response, Great West has not sought relief from the automatic stay in order to proceed against the Defendants.  *See in re Butch Thompson Enterprises, Inc.*, Case No. 24-59309, Northern District of Georgia Bankruptcy Court.  Notably, one other creditor has filed for relief from the automatic stay under similar circumstances involving a personal

guaranty signed by Judson Thompson. *See id*. at Dkt. 30 – Motion for Relief from Stay.

While Plaintiff is correct that the automatic stay does not generally apply to non-debtor defendants, there are exceptions for unusual circumstances. *See A.H. Robins Co., Inc. v. Piccinini*, 788 F.2d 994, 999 (4th Cir. 1986); *Ritchie Capital Mgmt, L.L.C. v. Jeffries*, 653 F.3d 755, 762 (8th Cir. 2011). The automatic stay is extended where "the identity between parties is so great as to make a judgment against the third-party defendant in effect a judgment or finding against the debtor." *See in re Panther Mountain Land Development, LLC*, 686 F.3d 916, 923 (8th Cir. 2012).

This case contains the required unusual circumstances as any judgment against the Defendants would, in effect, be a judgment against debtor BTE. Not only are the claimed debts by Great Midwest solely due to the Contract with BTE, but the numerous other personal guarantees effectively make Defendants and BTE the same for purposes of collections. Dkt. 56-2 SUMF ¶¶ 11, 44, 54, and 64; SAMF ¶13. Defendants have numerous personal guarantees to other entities for debts of BTE beyond amounts claimed by Great Midwest. SAMF ¶13. These joint debts include the following creditors: (1) First National Community Bank; (2) Greenwich Capital Management; (3) Clearfund Solutions LLC; (4) White Road Capital LLC; (5) Advance Service, Inc.; (6) Prosperum Capital Partners LLC; and (7) Great Midwest.

SAMF ¶13.  Given the number of joint creditors and amounts owed, all of which stem from contracts and actions with BTE, any judgment against the Defendants would be a de facto judgment against BTE.  Therefore, the automatic stay should be extended to the Defendants or, at minimum, the action stayed pending direction from the bankruptcy court that the automatic stay does not apply to the Defendants.

**B. Summary Judgment Standard.**

Genuine issues of fact regarding the appropriateness of Great Midwest's actions, including taking over the Project following an improper termination, preclude summary judgment.  The Defendants' version of events is sufficient for a jury to conclude that a factual dispute exists regarding Great Midwest's consideration of the evidence and actions before rushing to settle the bond claims and completing the work. "A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)." *Berg v. Travelers Indem. Co. of Connecticut*, No. 1:22-cv-02591-LMM, 2024 WL 3915106, at *1 (N.D. Ga. Aug. 14, 2024).

A legitimate disagreement exists between the parties about whether Great Midwest breached its obligations by taking over the Contract and completing work on Hillcrest when the underlying default termination was improper.  Similar factual questions exist as to whether Great Midwest acted reasonably when it refused to allow BTE to complete the work. "Ultimately, '[t]he basic issue before the court on

a motion for summary judgment is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Skelton v. Action Traders, Ltd*., No. 1:19-cv-2825-JPB, 2023 WL 2584476, at *5 (N.D. Ga. March 17, 2023). A jury hearing the testimony provided by the Defendants could find in favor of the Defendants. "An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party." *Omnibus Trading, Inc. v. Gold Creek Foods, LLC*, 591 F.Supp.3d 1334, 1344 (N.D. Ga. 2021). Certainly, reasonable minds could conclude that Great Midwest did not act properly in this matter and should not be allowed to recover. "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

Regardless, any doubts regarding the sufficiency of the evidence for summary adjudication must be decided in favor of the Defendants. "All reasonable doubts, however, are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993)." *Berg v. Travelers Indem. Co. of Connecticut*, No. 1:22-cv-02591-LMM, 2024 WL 3915106, at *1 (N.D. Ga. Aug. 14, 2024). Importantly, the evidence presented by the Defendants is presumed true. "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justiciable inferences are to be drawn in [that party's] favor."

*Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S.Ct. 1545, 1551 – 1552, 143 L.Ed.2d 731 (1999). "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." *Tolston v. City of Atlanta, Georgia*, No. 1:20-cv-4221-SEC, 2024 WL 1533609, *13 (N.D. Ga. March 14, 2024).

**C.    Factual Issues Preclude Summary Judgment as to the Enforceability of the Indemnity Agreement.**

Defendants dispute the Indemnity Agreement's validity and enforceability under Georgia's Anti-indemnity Act O.C.G.A. § 13-8-2(b) (the "Act"). The Act states:

> An . . . agreement . . . in connection with or collateral to a contract or agreement relative to the construction, alteration, repair, or maintenance of a building structure . . . purporting to require that one party to such contract or agreement shall indemnify, hold harmless, insure, or defend the other party to the contract or other named indemnitee[s] . . . arising out of bodily injury to persons, death, or damage to property caused by or resulting from the sole negligence of the indemnitee . . . is against public policy and is void and unenforceable.
> (O.C.G.A. § 13-8-2(b))

Georgia courts have established a two-part test that an indemnity agreement violates the Act: "an indemnification provision must (1) relate in some way to a contract for construction…of certain property, and (2) promise to indemnify a party for damages arising from that own party's sole negligence." *Kennedy Development Co., v. Camp*, 290 Ga. 257, 259 (2011) (punctuations omitted) (emphasis added).

11

The Indemnity Agreement states the signatories "jointly and severally, covenant, promise and agree to indemnify and hold harmless Surety from and against ANY AND ALL LOSS WHATSOEVER, including but not limited to any and all liability, loss, claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature, together with interest thereon." Dkt. 56-3 Exh. 1 – Indemnity Agreement p. 16.

An indemnification clause does not have to contain the words "sole negligence" to violate the Anti-Indemnity Act. *Ameris Bancorp v. Ackerman*, 296 Ga. App. 295, 298 (2009). Instead, under Georgia law, exculpatory language "attempt[ing] to 'shift[] all liability . . . no matter the origin of the claim or who is at fault,' violates the public policy of the State of Georgia as expressed in [the Act] [and] is therefore void an unenforceable." *Id.*

The alleged Indemnity Agreement is, without dispute, related to construction. And, calling for indemnity against "ANY AND ALL LOSS WHATSOEVER…of whatever kind or nature" meets the criteria established by the *Kennedy* and explained further in *Ameris Bancorp*. Thus, any potential claim for indemnity against Defendants by Great Midwest pursuant to the Indemnity Agreement should fail as it violates Georgia's Anti-Indemnity Act.

**D. Even if the Indemnity Agreement is Enforceable, Factual Issues Regarding Whether Great Midwest Acted in Good Faith Preclude Summary Judgment.**

Due to Cobb County's breaches, Great Midwest did not owe any performance under the bond, thereby calling into question whether Great Midwest satisfied the duty of good faith and fair dealing by choosing to finish performance of the work.

"Generally, a surety or guarantor may assert all defenses to a contract which would be available to his principal, with the exception of personal defenses, e.g., infancy, incapacity, bankruptcy, etc." *Hardaway Co. v. Amwest Sur. Ins. Co.*, 15 F.3d 172, 174 (11th Cir. 1994) (quoting *Thomasson v. Pineco*, Inc., 173 Ga.App. 794, 328 S.E.2d 410 (1985)). Cobb County is not entitled to any of the amounts it claims it is owed because it has materially breached the Contract. Thus, BTE has valid defenses to any claims from Cobb County and Great Midwest was notified of these defenses on numerous occasions and still chose to perform.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Brack v. Brownlee*, 246 Ga. 818, 820 (Ga. 1980). Where the manner of performance is left to the discretion of one of the parties, that party is required to exercise good faith. *Hunting Aircraft, Inc. v. Peachtree City Airport Authority*, 626 S.E.2d 139, 141 (Ga. App. 2006). "What constitutes good faith is a question for the finder of fact." *Id.*

Defendants have repeatedly stated that Great Midwest did not act in good faith when it elected to take over the Contract, when it appropriated funds owed to BTE, and when it elected to utilize a different completion contractor.   Dkts. 11-14, Verified Answers p. 8.   Additionally, Great West failed to reasonably consider whether the default termination was proper, which is a condition precedent to any indemnity obligations.   Defendants repeatedly informed Great Midwest that the default was improper for numerous reasons, including prior material breach by Cobb County by wrongfully withholding payments, failure to process change orders and time extensions, applying an overly restrictive inspection standard, and finally by not following the process for termination.   SAMF ¶ 14-16, 18.   Indeed, the simple fact that Cobb County refused to allow change orders is a material breach that excuses any future performance by BTE.   *Id.* at ¶14.   Despite the overwhelming evidence showing the termination was improper, Great Midwest chose to complete the Project.   Dkt. 56-2 SUMF ¶ 37-39.   Whether this was in good faith or not is a question for the fact finder that precludes summary judgment.

Similarly, it is a fact issue of whether Great Midwest acted reasonably in refusing to allow BTE to finish the Project.   BTE submitted a final estimate for completion within one (1) week of receiving the request for quotation from Great Midwest.   SAMF ¶ 20; Judson Dec. 23-24; Dkt. 56-2 SUMF ¶33 As the prior contractor, BTE was familiar with the site, was able to quickly mobilize, and would

have been able to quickly proceed.  Instead, Great Midwest waited until February 2, 2024, four months after BTE submitted its takeover proposal, to execute a takeover contract with Williams & Rowe.  Dkt. 56-2 SUMF ¶39.  The takeover contractor did not receive a notice to proceed until March 19, 2024.  Dkt. 56-2 SUMF ¶41.  This again raises a fact issue of whether Great Midwest acted in good faith and fair dealing in awarding the takeover contract to a new contractor.  This fact issue must be resolved by the jury.

Finally, fact questions exist as to whether the amounts that Great Midwest has, and continued to incur, are reasonable and allocable to BTE as original scope work that Great Midwest chose to complete.  This is particularly true as BTE submitted a proposal to complete the work and could have started much earlier than the option Great Midwest chose.  Dkt. 56-2 SUMF ¶33, 39.  Further, Great Midwest has not made any showing that the amounts it is seeking are related to the base scope of work that BTE was originally responsible for.  Indeed, there is no analysis or showing of the reasonableness of the costs but rather a conclusory assumption that the amounts are reasonable and must be paid.  This is an issue belonging to the fact finder of whether the amounts incurred are reasonable and allocable to BTE and the Defendants.

## **Conclusion**

Great West's Motion for Partial Summary Judgment lacks both legal and factual justification.  For these reasons, the Defendants request the Court deny Great Midwest Insurance Company's Motion for Partial Summary Judgment.

Dated this 28th day of October 2024.

> **SMITH, CURRIE OLES LLP**
>
> */s/ Lochlin B. Samples*
> Lochlin B. Samples
> Georgia Bar No. 303893
> Suite 2700, Marquis One Tower
> 245 Peachtree Center Avenue N.E.
> Atlanta, Georgia 30303-1227
> lbsamples@smithcurrie.com
>
> *Attorneys for Defendants*

## **CERTIFICATE OF COMPLIANCE**

I certify that the brief has been prepared with one of the fonts (Times New Roman) and point selections (14 pt.) approved by the Court in LR 5.1.

> */s/ Lochlin B. Samples*
> Lochlin Samples
> Georgia Bar No. 303893

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 28th day of October 2024, I electronically filed a copy of the foregoing Defendants Conrad Corporation, Inc., Judson C. Thompson and Carolyn S. Thompson's Response in Opposition to Plaintiff's Motion for Partial Summary Judgment with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ Lochlin B. Samples
Georgia Bar No. 303893

17